Please be seated. We'll call the next case of the morning. Apex Clearing Corporation Securities and Exchange Commission, Mr. Mills. Thank you, Your Honor. Good morning, Your Honor. I'm Christopher Mills, representing Petitioner Apex Clearing Corporation. Starting in 2022, the Securities and Exchange Commission repeatedly told firms that its off-channel communications initiative involved standardized settlement terms. Apex settled on that basis in August 2024, as did dozens of similarly situated firms between 2022 and 2024. Then, in January 2025, the Commission settled like cases with like firms on materially lighter terms. Were those first settlement, 18 I think it was, you can correct me, identical or just similar in the ways that you believe were lessened in the later settlements? The settlements beginning, Your Honor, in 2022 with the first wave of off-channel communications settlements were identical. They were uniform settlements that were the same form and involved the same undertakings. So how many were there? Was it 18 until the January 2025? There were 75 or 70 cases against broker-dealers between 2022 and January 2025. And those all involved indistinguishable facts, violations, and undertakings, Your Honor, with one exception, which I assume we'll discuss. When Apex asked the Commission to conform its undertakings with the January 2025 orders, a narrow request supported by the Commission's own rules and precedent, the Commission refused. And that denial was arbitrary and capricious for two independent reasons. First, in an enforcement initiative where the Commission itself said it would involve standardized settlement terms, it refused to treat like cases alike, even when it was asked to do so. And second, the Commission's denial was not the product of reasoned decision-making. The Commission never explained its unequal treatment of similarly situated firms. It did not meaningfully address Apex's arguments, grapple with the enforcement-sweeped context that the Commission itself created, or reconcile its decision with its own modification precedent. And the Commission's arguments before this Court merely reinforce those errors. So we ask that the Court vacate the Commission's order. On the first point, the dissimilar treatment of like firms, it's a bedrock principle of administrative law that agencies must treat like cases alike. The SEC recognized that principle, and it repeatedly said that initiative settlements would involve standardized settlement terms. It said so seven times between 2022 and 2024. And then it entered into waves of settlements since 2022 with uniform undertakings. There's no dispute that Apex's settlement and the January 2025 settlements are like cases. Let me understand the reach of this rule that you're proposing. SEC, other agencies are settling things with regulated parties all the time. Is it the fact that there was a collective that perhaps you can identify that was within this enforcement sweep? That means later settlements with later enforcement actions is not really the standard, and that we must, everything involved in the sweep must be kept the same? I mean, I don't want to put words in your mouth, but surely you're not saying that an agency can't change the penalties and the settlement agreements as the years go by just for the same misconduct? Are they locked in that first settlement forever? No, Your Honor. This is a very narrow and unique set of circumstances. We say in an enforcement initiative, which the commission itself announced, when the commission itself said repeatedly that settlements would involve standardized settlement terms and parties agreed to settle on that basis. And then when later settlements in the same initiative with like firms for identical violations involved materially lighter terms. Is there anything in this record that these later groups were holdouts? They wouldn't settle on what you call in your briefing, take it or leave it ultimatum? There is nothing in the record to that. The commission did not support its decision on that basis. What about that as a proposed basis? Would that be a valid approach for an agency? I'm not sure, Your Honor, when it's saying that there's going to be standardized settlement terms. Obviously, we agree that the commission can update its approach to things. But we think that the commission precedent and the APA require that if the agency is asked to modify its settlements to hold the bargain it struck with earlier firms, that it must either conform the undertakings or provide a reasoned explanation for its denial to do so. And here the commission didn't either. What is the, I was going to say substantive law, I don't know that that's the right term, but what's the lore about what settlements have to be? I mean, what are the rules of engagement here when the SEC enters into settlements? What are the rules of engagement? So we're not quarreling with the SEC's ability to settle any of these cases, Your Honor. Oh, no, but you are arguing about on what basis they can do it, so. We're making a narrow claim that when in an enforcement initiative, the commission changes course and imposes lighter sanctions on light firms later, and the commission's own precedent supports modification in that circumstance, it's arbitrary and capricious for the commission to deny our request for a ruling. What's the basic law in that field? I mean, what is it that governs the basis on which the SEC can settle? What's the rules of engagement, you might say? It would be the Exchange Act, Your Honor, and the APA combined. Settlements, for example, must be in the public interest. The remedies must be in the public interest. And then the commission cannot act arbitrary and capriciously. So it's both the APA and the Exchange Act, Your Honor. There's no dispute that APEX's settlement and the January 2025 settlements were part of the same initiative. The commission concedes that. And there's no dispute that APEX and the light firms that settled in January 2025 were not treated alike. Again, the SEC does not dispute that. In that narrow and unusual circumstance, it was arbitrary and capricious for the commission to deny APEX's request. The SEC's denial also is not the product of reasoned decision-making. The denial did not provide a reasoned explanation for the disparate treatment of light firms. The SEC never defends the fairness of its conduct. And Commissioner Peirce recognized that in her dissent. The SEC has never had a response, both substantively and why the undertakings for APEX must be ordered, which triggers a number of collateral consequences, while the undertakings for the respondents in January 2025 do not need to be ordered. I know it's a technical aspect of operations of settlements, but it has material collateral consequences on APEX compared to the firms that settled in January 2025. Instead, the SEC's denial impermissibly treats finality as a trump card. The SEC did not engage in any kind of balancing of the equities or any other interests. It now says it does in its brief before this Court, but can't point to anything in the record or the order. And simply saying something was considered is no replacement for actually considering it. When I look at the dissent by the Commissioner to the two majority members, I don't see that the dissenter is quite accepting the way you are presenting this. There is something that seems to be the principal argument, and you will correct me, is that the dissenter is saying it should have been better explained, that the majority needed to, as you're asking us to do. It's not that it didn't have the authority, but it didn't explain itself well enough. Is that a fair read of dissent? And it certainly rejected your explicitly 60B-5 and whatever the SEC's specific rule is. So what do you make of that? Isn't this primarily a failure to explain? I think there's two parts to that, Southwick. One, Commissioner Peirce would have granted relief and would have amended the order to make the undertakings voluntary, thereby removing the collateral consequences. She would have granted substantive relief. And then she also dissented based, as you note, on the fact that the Commission's order failed to provide adequate explanation. There was two parts, Your Honor. And when you say there's significant emphasis on the enforcement sweep aspect also in the dissent? Yes, that's one of the things, I'm sorry. Yes, Your Honor, that is one of the things that Commissioner Peirce highlighted that the Commission's order did not grapple with. Well, the majority, even with that in their face, didn't decide, as far as I can tell, and as your briefing says, didn't address the enforcement sweep aspect, which to me means they found it irrelevant. And I could at least see the argument. I want you to respond to it. It seems to me the SEC majority may have been saying, implicitly, there's no good difference between enforcement sweep and any other collective enforcement actions that we might have where we have a number of enforcement actions involving the same sort of misconduct. It really doesn't matter. We have this authority to settle on the terms that we are able to settle on. So I think there's some possible purchase to the idea that enforcement sweep really isn't different than just numerous enforcement actions for the same sort of misconduct by the same sort of companies. Your Honor, I think that the enforcement sweep is meaningfully different, and you don't need to take my word for it. The Commission, in those waiver orders, the seven times between 2022 and 2024, for example, at JA-041, said that the off-channel communication initiative had a unique nature, and so it was unlike the normal run-of-the-mill enforcement action. Is it unique? Do you know anything? It's probably for a fellow at the other table. Do you know how often SEC engages in enforcement sweeps? Well, they'll engage in enforcement sweeps from time to time. It's much less than the normal stand-alone ad hoc enforcement actions. It's not unique, but it is the unusual approach. And the initiative itself is unique when compared to other stand-alone actions. There is a categorical difference between how the Commission settles and brings cases as part of initiatives and sweeps versus stand-alone actions. And so, Your Honor, also, the Commission treated enforcement sweeps differently, and you'll see that in their Millennium Partners decision. There, the Commission recognized that the very narrow circumstances that we are right here now were appropriate to warrant relief. And so the SEC, therefore, arbitrarily deviated from that Millennium Partners precedent. We're not asking for any new law to be created. We're not asking for any extension of anything. We are simply asking for the same relief that Millennium Partners and others have already been provided by the Commission. The Commission says that it tries to distinguish Millennium Partners by turning on the particular circumstances, but it can't hide behind the fact-intentive nature of that analysis. This Court's case law forecloses that kind of evasion of an APA claim. It also can't be squared with the Commission's arguments for this Court that our bringing up the particular facts and circumstances is some kind of a red herring. If the particular facts and circumstances matter, they matter. And here, they counsel towards granting the relief that APEX has requested. The Commission cites three facts to distinguish Millennium, but those facts have no connection to the rationale the Commission used for rejecting APEX's request, which were finality and original agreement. First, in Millennium Partners, Millennium originally agreed to the terms that it sought to modify. And by modifying the Millennium Partners settlement, there was some upsetting of finality interests. But those issues did not carry the day in Millennium like they did here today. And the Commission's attempts to distinguish them are in arbitrary grounds. If, in Millennium, the SEC applied the test it required APEX to meet here, the SEC would not have granted relief. And that, as this Court explained in Miranda, shows the arbitrariness of the Commission's actions. Now, to try to defend its decision, the Commission argues that APEX waived its right to petition this Court for review. That waiver argument is meritless. APEX petitioned for review of the April 2025 order denying its motion to modify. There's a strong presumption of judicial review of agency action. And it's the SEC's burden to prove a waiver. They can't do that here. The waiver that the SEC cites to applies to the August 2024 settled order and that order only. That is unambiguous. And even if there was any ambiguity, that ambiguity has to be resolved in APEX's favor and against the Commission. The SEC doesn't even cite any argument or case law saying that the waiver precludes judicial review of another order. The SEC's cite to the D.C. Circuit's decision in Collins is just not relevant. That case is not about waiver. Moreover, below, the Commission never argued that APEX waived any ability to seek relief or modification. And so it's waived its waiver argument. It seems like something comparable in the ballpark of maybe not of waiver, though, is that this is a motion to modify a settlement. And I don't think we have to buy in a settler's remorse as what's really going on here. But a settlement certainly presumes finality. And by entering the settlement, you're not necessarily waiving any right to attack it later. But you and the SEC have moved on, as you see, and they're now dealing with other regulated parties. I have all your arguments about how they continue to be grouped together. But it does weigh on me that this was a settlement that you're now trying to modify. And that is what is before us. Yes, Your Honor. The SEC found those finality interests were not an obstacle to modifying in Millennium Partners and or in Mass Financial, Putnam, Janus, or MDC, which we cite in our briefs as well. So the idea that there's a settlement here, that's relevant. But there has never been a trump card to prevent release. Well, but it's interesting that Millennium Partners, however you want to say there's language in there relevant here, is such a distinguishable case. And it's the case, Your Honor, which makes it sound like modifying is not an everyday occasion. Well, it's because the circumstances for modification don't come up very often, Your Honor. All right, counsel. Thank you.  We'll hear if there's another point of view. Good morning, Your Honors. And thank you, Daniel Matreau, for the Securities and Exchange Commission. Apex has argued this case as if it were the Commission's burden to justify maintaining the undertakings Apex voluntarily accepted in its settlement. That is backwards. As the party seeking to modify a final settled order, it was Apex's burden to establish that an exception to finality applied. Before the Commission, Apex argued that it met the standard for relief under Rule 60b-5 because later settlements with similarly situated parties included less burdensome undertakings. The Commission reasonably rejected that argument, explaining that there's no right to reopen a settlement just because another party later got a better deal on a similar case. Every settlement carries that risk, and if that were enough to require reopening a settlement, no settlement would ever be final, and the Commission would not be able to settle cases based on its best judgment because it would have to consider how past settlements would be affected. That's why Rule 60b-5 has always been understood to require something more, a significant change like unworkability or illegality, not just disparity with a later settlement. Apex argues that it nonetheless had a right to assume the same undertakings, to the same undertakings included in the January 2025 orders based on the enforcement sweep context, Commission precedent, and the APA's like-cases principle, but each of those arguments is meritless. The fact that Apex settled as part of an enforcement sweep does not alter the analysis under the Rule 60b-5 standard. An enforcement sweep is an informal label used to describe one way the Commission exercises its enforcement discretion to address recurring or widespread misconduct. It doesn't trigger a different set of finality rules and constraints on the Commission's enforcement discretion. Nothing in the Exchange Act suggests that the Commission's discretion turns on the enforcement strategy it chooses. So a change in bargaining position in an enforcement sweep or a decision to later settle cases, a later case on different terms, is just as much a permissible exercise of the Commission's enforcement discretion as it is in any other context. It's not a change... Let me ask you about the University of Texas, MD Anderson case, a fairly recent case and maybe a fairly recent standard, I'm not sure, but the panel there published opinion. They held that an AOJ deciding I don't need to make my enforcement action consistent with others is within my discretion on appeal, petition for review, the court seemed to say otherwise. How would you distinguish that opinion? Sure, Your Honor. So MD Anderson involved a penalty adjudication, not a settlement. The challenged order in that case imposed a significant financial penalty without providing any explanation for a previous decision in which it imposed no penalty at all for the same conduct. The order thus flunked the APA's requirement to provide a reasoned explanation for treating similarly situated parties differently. Here, the Commission complied with that APA obligation by explaining why APEX is not similarly situated to parties that have previously been granted relief from settled undertakings. So it doesn't establish that the Commission was required to justify unreviewable past settlements. And just to get to the argument, the suggestion that we did not argue that APEX has waived its right to judicial review of the order under review. We pointed out that APEX waived its right to challenge its own settled order and that the January 2025 orders, like all settlement decisions, are committed to the Commission's discretion by law and are presumptively unreviewable. So APEX can't directly challenge the remedies in those orders on the ground that they don't treat similarly situated parties similarly. Our point was just that those well-established limits on judicial review of settlements would be rendered meaningless if the Commission had to justify past settlement outcomes upon the filing of a motion to modify. And that's what APEX is asking for here. I see on the one hand no need to justify when the initial settlement is entered, but when the motion to modify its file at the initial settlement in January 2025 is entered, we're going to do these differently. Here's why. It's necessary there, but once it's raised by one of the prior settlers, and it certainly was on the table, it seemed to me time for justification, potentially. I also find it of some moment that the two majority writers did not address the enforcement sweep aspect of this, which I've heard from Mr. Mills that is not unique. Maybe you could also, as part of the answer, tell me how rare are enforcement sweeps at the SEC. So how rare are they, and how relevant is the fact that this was an enforcement sweep that would suggest everybody who swept in ought to be treated similarly? So as I mentioned, the Commission engages in enforcement sweeps occasionally in situations where there's widespread and recurring misconduct, but the use of an enforcement sweep doesn't trigger a new legal regime or different finality rules. It's just an exercise of the Commission's... Well, it may trigger an explanation. It may trigger the obligation to explain why people are being treated differently who are all gathered up at the same time. So I think what Apex argues... What Apex argued below was that... That it was inequitable under the Rule 60b-5 standard to apply different remedies to similarly situated settling parties. It didn't argue below that that rule only applied in the sweep context. It just invoked the enforcement sweep as evidence that it was similarly situated to the parties that settled in January 2025. The Commission, in its order, took that as a given that the parties here were similarly situated and reasonably concluded that there's no right to reopen a settlement just because a similarly situated party later gets a better deal. Now, Apex argues... So in other words, the decision to settle a similar case differently is not the kind of changed circumstance that creates a right to relief under Rule 60b-5, regardless of whether the settlement is part of an enforcement sweep or not. And I want to directly address Apex's suggestion that it reasonably relied, that there was an understanding or assurance that in an enforcement sweep that everybody's going to be treated the same for the duration of the sweep. I mean, the first problem with that argument is, as I said, it's not the argument that Apex made below. I urge the Court to look at JA-57 and the discussion of JA-83 because you'll not find the argument that there was an assurance or understanding that Apex relied on. But in any event, the Commission did not agree in the enforcement sweep to any limits or conditions on its discretion to settle future cases on different terms. Apex settled order contains no guarantee that all settlements going forward would have uniform undertakings. And Apex specifically represented that in its signed offer of settlement that no promises or inducements of any kind were made to induce it to settle. That's on JA-29. So if such a guarantee were so critical to Apex's decision to settle, it could have tried to bargain to put one in the order, but it didn't. So Apex tries to get past that by pointing to the waiver orders, this sentence in the waiver orders about standardized settlement terms. First of all, that's something that Apex cites for the first time in its reply brief. It didn't cite the waiver orders below or in its opening brief, and there's good reason. Could you restate that and quite follow? What did they say for the first time in their reply brief? So the first time in their reply brief is you heard my friend talk about how the commission has repeatedly said that the enforcement sweep had standardized settlement terms. What it's referring to for the first time in its reply brief is the waiver orders. And I'd just like to take a minute to explain what those orders were and why they don't mean what Apex is saying they mean. So for background, with each batch of these off-channel communications settlements, the commission issued an order on the same day waiving certain statutory disqualification provisions that would otherwise be triggered by those settlements. Apex highlights one sentence in the waiver order that describes some of the terms of the settlements being approved on that day as being standardized. That's JA-41. But as we know, not all of the settlement terms were the same. And the order doesn't specify which terms it's even referring to. So we're talking about a passing description of unspecified terms in the specific settlements issued on that day. That kind of description cannot plausibly be understood as a binding, forward-looking commitment that undertakings in all future settlements would be the same. And the fact that neither Apex nor any other respondent cited the waiver orders below is a good indication of that. That's not what they meant. That's not how they can fairly be interpreted. Can I ask a question? Excuse me. Can I ask a question? Sure. The SEC's sort of rules of engagement in dealing with settlements, have they been reduced to some kind of a, I would describe it informally, as a pitch kit? Does the SEC say, okay, here are the rules that we apply generally to proposed settlements? Is there any such thing as that? No, Your Honor. As courts have recognized repeatedly, the decision whether and how to settle is generally committed to agency discretion by law. And the Exchange Act in various provisions, including Section 21 and Section 21 caps A through C, all accord the Commission discretion in deciding whether and how to settle. So, you know, the decision to change bargaining positions or to take one position at one point in time and a different position in a different point in time is a matter of agency, of the Commission's discretion. It's not the kind of change in factual conditions or law that Rule 60b-5 contemplates as potentially creating a right to relief to reopen a settlement. I would like to also address APEX's reliance on Millennium Partners, because the Commission reasonably explained that APEX is not similarly situated to the Respondent in Millennium Partners, which APEX admits is its best explained example of allegedly inconsistent precedent. The decision there to grant relief there was expressly based on the particular combination of circumstances present, including, among other things, the fact that the undertaking there was indefinite. The Respondent had been complying with it for over a decade, and opposed the modification. The Commission concluded here that APEX did not have a right to relief under that precedent, as it argued, because unlike the Respondent there, APEX sought to eliminate time-limited undertakings just a few months after agreeing to them, and despite the Division's opposition. And contrary to what my friend said, those are entirely rational grounds to distinguish Millennium Partners. The D.C. Circuit in the Harris-Teter case and the Caldecott case cited in our brief both specifically recognize that the length of compliance with an undertaking is a relevant factor in the Rule 60b-5 analysis. And in deciding whether to lift undertakings, it's also perfectly reasonable to consider whether the undertaking expires on its own terms or not, and whether the Commission staff that recommended the undertakings in the first place should be modified. My friend said that those differences are not related to the sole factors the Commission relied on in its order. I think that argument is just circular. APEX argued that it was similarly situated to Millennium Partners and so had a right to relief under that precedent. The Commission disagreed because unlike Millennium Partners, APEX was not seeking to sunset an indefinite undertaking after a decade of compliance and without objection from the Division of Enforcement. So those are three additional factors the Commission relied on in denying APEX's motion, not just finality and voluntary acceptance. The only question is whether those are rational grounds to distinguish the case, and they are, as I said. Let me ask you a couple of factual questions. Is the SEC's position that there are not more onerous, I don't want to use the wrong adverb, I guess, substantially more, whatever. Does the SEC agree that there are more severe settlement terms in the earlier settlements than in the ones in January of 2025? Yeah, the Commission is not disputing that the January orders have longer and less burdensome undertakings. You probably have a follow-up, but let me move on here. There's no suggestion here that this later group or holdouts in the initial settlement efforts by the SEC, they just were gotten to later by the SEC staff as they were working through all those who were caught up in the enforcement sweep, or just what do we know about the difference timing as to why certain ones were settled when they were and why this later group with lesser terms settled when they did. The justification to me, maybe that holds up or maybe doesn't, is that they refused to settle. And so the SEC ultimately got them a better deal. That's not what we have in front of us, is there? We can only speculate precisely because settlements are not subject to judicial review. When the Commission settles an enforcement action, it doesn't provide a public explanation of the decision. It looks like a policy change. Is that at all acknowledged by the SEC that this was a policy change? I think I would dispute the suggestion that it's a policy change. The Commission changed its bargaining position in one set of cases. It took a negotiating position. It demanded certain terms before it was willing to waive its right to litigate. That does not bind, that position does not bind the Commission in an enforcement sweep to take the same position in the future anymore than it does in any other context. Again, Apex could have bargained for some guarantee like that, but it didn't do so. And nothing about the enforcement sweep context changes the fact that this was a change, an exercise of enforcement discretion, a change in bargaining position. Not a change in formal policy. And it certainly didn't render Apex's, the undertakings that Apex agreed to, more burdensome, onerously burdensome, or unworkable, or detrimental to the public interest. And that was, without that kind of showing, the Commission has a sufficient, the failure to make that showing is a sufficient basis in its own right to deny the motion. I also, if I can, want to quickly just address the dissent and the suggestion that there wasn't adequate explanation in the, in the Commission's, in the majority's decision. Because I think you were right, Judge Southwick, that the Commission's reasonable position was that this change in enforcement, in the exercise of enforcement discretion, does not implicate is not a change in law or facts, regardless of the enforcement, of the settlement enforcement sweep context. And again, the dissenting agreement, the dissenting Commissioner didn't disagree with that. She agreed with the majority that the Commission had no obligation to grant relief under Rule 60.55 or any of the Commission's rules or precedents. Her only disagreement was over whether the Commission should, should have exercised its discretionary authority under Rule 100C to grant relief in the interests of justice anyway. But she didn't suggest that it was rational or unreasonable or arbitrary not to do so here. She was essentially disagreeing with how the Commission exercised its enforcement discretion in the, the choice to take a different bargaining position in the January 2025 orders. And the majority did address the Rule 100C question by explaining that Rule 100C did not create a right to substantive relief and that... Let me ask, even if we basically agree with what you're saying right now that the substantial discretion on the part of agencies, SEC, is all we need to talk about right now on deciding whether to modify, deciding whether to enter different settlements with, with different regulated parties and they're subject to  When is it abused?  so... I don't mind you answering in your additional time. So, courts have recognized that settlement decisions are presumptively unreviewable and committed to the Commission's discretion. But that doesn't mean there's no guardrails whatsoever. So, I mean, there are, other agencies obviously have an advantage in encouraging settlements. So, if an agency had a practice of just arbitrarily settling cases wildly differently, that would discourage respondents from  You know, such a fact pattern could also, you know, support a claim that the respondent was singled out for an impermissible reason, like, like racial discrimination or retaliation or something which might allow it to rebut the presumption of unreviewability or it could help to support a  you know, that the respondent was induced to settle based on misrepresentations which I would note is not, Apex could have made that claim here but it didn't rely on 60B3. And so, there are, you know, Heckler itself acknowledges that enforcement discretion is not absolute. There are a couple narrow exceptions.  you know, abdication of  responsibility, mistaken assessment of  those types of things, but that's not what we have here. And Apex has not pointed to any evidence that the commission agreed to limit its discretion here. And as I said, the waiver orders which it relies on now almost exclusively at oral argument, previously in its opening brief, it relied on staff statements, again, not cited below to the commission, not argued below to the commission. Those just don't demonstrate that this was anything other than an exercise of the commission's enforcement discretion that doesn't create a right to the benefit of later settlements. Thank you for your time. We ask the court to deny the petition for you. Your Honor, first, the APA does not provide unlimited and unreviewable discretion for the commission to deny a motion to modify on any terms, even if it comes into the circumstance of a motion to modify a  Second, the commission has argued that Apex should have gotten some kind of approval   The commission repeatedly said that the settlement would involve standardized settlement terms. Apex relied on that and they're entitled to rely on the commission's  The commission now says that we did not bring up these waiver orders below. That's simply not true. We cited them in our opening brief at JA051. And the reason we didn't elaborate on them until now is because there's no dispute about the issue before the commission's brief before this court. So when the SEC introduced the issue, we, of  replied in our reply. The commission did not distinguish a case simply on fleeting facts and distinctions. The staff's agreements, the time of the settlement and the indeterminate nature of the undertakings were not the reason the commission explained for denying Apex's relief. The commission provided two principles, finality of judgments and the fact that  Apex originally agreed to the terms. Those two principles, finality and agreement of the terms, were present in the lenient. The three facts the  continues to highlight are simply not relevant to the legal question. The commission now also argues that we have never argued that our rule is limited to the enforcement context suite. That's also not true. At JA60 and JA85 we are very clear that we were making narrow requests for relief in the context of the enforcement initiative. That we were not trying to have any kind of broad rule that would apply more broadly to standalone or ad hoc settlements. Mr. Mayor, a narrow rule ends up being broad in the next case or two. This is the point of view case that is of most concern to me. You may be right, but let me mention it. It just seems to me that   suite perhaps, I'm not sure that is a manageable line. I believe that line is manageable. We are not asking this court to extend the law or make any new law here. In this circumstance, the commission has already granted before the type of relief. That is one example. In Janice and some other examples, we do cite at 56 and 57 as well. But those cases show there is not going to be a flood gate concern here. It was decided 10 years ago and there is not some kind of rush to reopen every settlement in every matter. And the reason is these circumstances occur very, very rarely and they are the commission's own creation. The  itself didn't have to. It said the  were part of an organization               Thank you both for bringing this case to us. We'll take it under advisement. Thank